UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARIEL FELIX,<br><br>       Plaintiff,<br><br>   -against-<br><br>BLOOMBERG, L.P.,<br><br>       Defendant. | 24-CV-960 (JGLC)<br><br>**OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

Defendant Bloomberg, L.P. fired its employee, Plaintiff Ariel Felix, shortly after the company learned that Felix had been using the prescription drug Klonopin in the workplace. Felix's texts to a colleague—including that she was "high" on an internal call and "fucked up" in the office—led Bloomberg to begin an investigation. Bloomberg maintains that it fired Felix because she lied during that investigation. Felix contends that Bloomberg's explanation is a pretext, and that the company's decision to fire her constituted disability discrimination arising from her Klonopin prescription for her anxiety disorder. Felix also argues that Bloomberg violated federal law by inquiring about her disability during its investigation.

Bloomberg now moves for summary judgment, asserting that Felix cannot establish a prima facie case of discrimination and that Bloomberg had a justifiable, non-discriminatory basis to terminate her employment. Bloomberg also seeks summary judgment on Felix's second claim that its investigatory questions themselves violated federal anti-discrimination law. For the reasons set forth below, the Court grants Bloomberg's motion for summary judgment in part and denies it in part.

**BACKGROUND**

The following facts are taken from the parties' Rule 56.1 Statements and accompanying exhibits. Unless otherwise indicated, the Court only cites a 56.1 statement where (1) the parties have agreed the factual assertion is undisputed; and (2) the factual assertion is properly supported by a citation to the record. This includes instances where a party does not truly "dispute" an assertion, but merely seeks to qualify or add their own "spin" to it. *See Kaye v. New York City Health and Hosps. Corp.*, No. 18-CV-12137 (JPC), 2023 WL 2745556, at *2 n.2 (S.D.N.Y. Mar. 31, 2023). The Court also relies on exhibits filed by the parties in connection with the instant motions, and any relevant pleadings in this case.

Plaintiff Ariel Felix ("Felix") started working in media sales for Defendant Bloomberg, L.P. ("Bloomberg") on October 7, 2019. ECF No. 37 ("Joint SMF") ¶ 1. In December 2022, she was promoted to Programmatic Team Leader. *Id.* ¶ 2. Early the following year, on January 11, 2023, Felix sent a text message to a member of her team, Madelyn Horan ("Horan"). *Id.* ¶¶ 9–10. "Mad," Felix wrote, "I'm high." *Id.* ¶ 10; ECF No. 33 ("Garland Decl."), Ex. 8 at P0378–79. Felix was at work. Joint SMF ¶ 10. This was the first of a series of messages that would ultimately lead to Felix's firing later that year, on October 26, 2023. *Id.* ¶ 3.

On July 10, 2023, Felix sent Horan another series of texts. *Id.* ¶ 11. "I haven't take a Klon in a hot minute," Felix wrote, referring to the prescription drug Klonopin. *Id.* ¶¶ 11–12; Garland Decl., Ex. 7 at P0463. "And I am like kinda Fuqed up," which Felix acknowledged at her deposition meant "fucked up." Joint SMF ¶¶ 11–13; Garland Decl., Ex. 7 at P0463. "I'm like tempted to take another lol," she confided to Horan, again referencing Klonopin. *Id.*

That same day, Felix sent Horan a video of herself from the Bloomberg bathrooms. Joint SMF ¶ 14. Felix was "swaying left and right but like pretending to dance." *Id.* (quoting ECF No.

33-1 ("Felix Dep.") at 173:2–3). Felix then texted Horan that she was "loopy." Joint SMF ¶ 16. Horan replied, "You is high as hell!!" to which Felix responded, "I am right?" *Id.* ¶ 17. Felix then added that she was "[o]blivious" and asked what her "job [was] again." *Id.*

Felix kept texting. She told Horan that she wanted to "take another" Klonopin. *Id.* ¶ 18. Horan replied: "Do not take another while at work!!" *Id.* Felix later texted that she was "on klonzzzs" and "[f]eeling [f]ree." *Id.* ¶ 19. A short time after that, Felix texted Horan that she had been "high" on "an internal call" 30 minutes beforehand and wanted more "kpins," which also refers to Klonopin. *Id.* ¶¶ 20–21.

On October 18, 2023, Horan sent screenshots of all of these messages to a member of Bloomberg's Human Resources department, Rachel Parisse ("Parisse"). *Id.* ¶¶ 10, 11, 14, 16–20. Horan testified that she had previously spoken with Human Resources about the difficulties she had been having with Felix once Felix became her manager. ECF No. 36 ("Bloomberg SMF") ¶ 10 (citing ECF No. 33-5 ("Horan Dep.") at 186:11–187:17); *see also* Horan Dep. at 187:15–17 ("I was not comfortable in my current position because of the way Ariel was treating me."). And on October 13, Horan emailed Parisse to discuss her "maternity leave, current role and a few other topics." Bloomberg SMF ¶ 8; ECF No. 43 ("Pl. Counterstatement") ¶ 8. The two spoke on October 17, where Horan asked Parisse questions about parental leave, expressed an interest in moving onto a different team, and shared her concerns about Felix's use of Klonopin at work. Bloomberg SMF ¶ 9; Pl. Counterstatement ¶ 9. The next day, Horan sent Parisse the screenshots of Felix's texts, and Parisse forwarded them to Jamie Marchini ("Marchini"), a Bloomberg Employee Relations worker responsible for investigating employee complaints in the Media department. Bloomberg SMF ¶¶ 12–13; Pl. Counterstatement ¶¶ 12–13.

On October 24, 2023, Marchini contacted and met with Felix. Joint SMF ¶ 22. Felix told Marchini that she would "be honest" during their meeting. *Id.* ¶ 23. Marchini asked Felix if she "could think of a time when she might have taken Klonopin in the workplace." *Id.* ¶ 25. In her deposition, Felix testified that she responded: "it's normally something that I wouldn't take, as it does have a tendency to make me a little tired and I need to be sharp at all times because my job requires me to look at data sets." *Id.* Felix also testified that she told Marchini that it was "highly unlikely" that she took Klonopin in the workplace. *Id.* At one point during the meeting, Felix also took out her phone and searched for Slack and text messages about "klon" or "kpin," then briefly showed—but did not hand—Marchini her phone. *Id.* ¶¶ 26–28.

According to Felix, Marchini began the meeting by asking, directly, "Do you take drugs?" ECF No. 44 ("Pl. Statement of Additional Material Facts" or "PSAMF") ¶ 81 (citing ECF No. 41 ("Felix Decl.") ¶ 21). In response, Felix "just started rattling off the prescription drugs that [she] was taking." ECF No. 46 ("Bloomberg Responses") ¶ 82. Marchini then asked Felix if she had ever taken the prescription drug Klonopin at work. *Id.* ¶ 83; Joint SMF ¶ 24.

The next day, Felix reached back out to Marchini, explaining that she had done "some digging on the topic." Joint SMF ¶ 29. She asked if Marchini was available to speak once more, and the two met again later that day. *Id.* ¶¶ 29–30. At this second meeting, Marchini asked Felix whether she had been impaired at work—or "something along those lines." *Id.* ¶ 33 (quoting Felix Dep. 245:20–246:4). Felix responded that she had "never been impaired at work." *Id.* ¶ 34 (quoting Felix Dep. 246:5–7). Felix also sent Marchini photos and screenshots of Slack and text messages between her and Horan, as well as photos of a few bottles of prescription drugs (Trazodone, Adderall, and Klonopin). *Id.* ¶ 32. Felix testified that Marchini had asked "for text messages that mentioned Klon, Kpin, all of the things, and I just basically pulled everything that

4

I had that either mentioned that word or mentioned anything regarding medications." *Id.* ¶ 31 (quoting Felix Dep. 215:5–18). According to Bloomberg, when "Marchini reviewed the screenshots that Felix had provided, she noticed that Felix had not included the July 10 text messages that Horan had provided showing that Felix had been impaired at work from taking Klonopin." ECF No. 38 ("MSJ") at 10 (citing Bloomberg SMF ¶ 40). Felix contends that she did send Marchini texts from her July 10 exchange with Horan. PSAMF ¶ 91.

Felix also told Marchini that she was prescribed Klonopin for her anxiety. PSAMF ¶ 78 (specifying that Felix told Marchini that she had been prescribed Klonopin due to her "anxiety disorder"); Bloomberg Responses ¶ 78 (only admitting that Felix testified that she told Marchini that she was prescribed Klonopin "for her anxiety"); *see also* Felix Dep. 239:3–10; Felix Decl. ¶ 17. Felix attests that she was prescribed Klonopin by her psychiatrist and that her prescription calls for her to take up to two pills per day, as needed. PSAMF ¶¶ 69–70; Felix Decl. ¶ 10. Bloomberg concedes only that Felix has attested to her prescription and that Felix sent Marchini a picture of a prescription bottle for Clonazepam with a label stating "Take 1 tablet by mouth twice a day. MAX DAILY DOSE 2 TABLETS." Bloomberg Responses ¶¶ 69–70. Klonopin is the brand name for Clonazepam. *Clonazepam (oral route)*, MAYO CLINIC (Mar. 1, 2026), https://www.mayoclinic.org/drugs-supplements/clonazepam-oral-route/description/drg-20072102.

The following day, on October 26, 2023, Felix met with Marchini once more—but this time, they were joined by Christine Cook ("Cook"), Bloomberg's Chief Revenue Officer. Joint SMF ¶¶ 6, 35. Felix's boss, Michael Wong ("Wong"), reported to Cook. *Id.* ¶¶ 5–6. Marchini and Cook informed Felix that she was being fired, "effective immediately." *Id.* ¶ 35. The reason Felix was being fired, Marchini explained, "was that [she] was not forthcoming in an investigation

against [her] . . . in violation [of] Bloomberg's Code of Conduct."[1] *Id.* ¶ 36 (quoting a narrative of events prepared by Felix, ECF No. 33-23 ("Felix Narrative") at P0540).

Felix disputes that rationale. On February 8, 2024, she filed the instant lawsuit against Bloomberg, alleging that she was fired due to disability and gender discrimination. ECF No. 1 ("Compl."). Specifically, Felix alleged that "Bloomberg violated federal and state law when it inquired into [her] lawful prescription drug usage and discriminated against her based on her disabilities arising from her anxiety disorder." Compl. ¶ 2. On April 9, 2025, Felix agreed to voluntarily withdraw her gender discrimination claims. ECF No. 30. Her lawsuit now rests on her disability-related claims under the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). *See* Compl.

The parties were unsuccessful in resolving their dispute through mediation. *See* ECF No. 12. So, on May 5, 2025, Bloomberg filed the Motion for Summary Judgment that is now before the Court. ECF No. 31. Bloomberg argues that Felix cannot establish a prima facie case of disability discrimination under the ADA, NYSHRL, or NYCHRL because she "cannot establish

---

[1] Marchini's final report concluded that Felix

> . . . was not fully truthful in the investigation process. She was not honest about her use of prescription drugs after being asked several times on 2 different occasions. She was also not truthful in the way the medication impacted her in the workplace. She stated in writing that she was "high on an internal call". Her judgment and integrity was poor and she did not "do the right thing". [Felix] was unprofessional in her working relationship with direct report, Madelyn Horan. [Felix] was provided with much opportunity to be truthful even when presented with concrete evidence.

MSJ at 11 (quoting Bloomberg SMF ¶ 45). Bloomberg's Employee Code of Conduct and Ethics, meanwhile, prohibits "[d]ishonesty, misrepresentation, either verbal or written"; "[e]ngaging in unprofessional conduct or behavior that falls short of standards of good judgment and professionalism"; and "[f]ailure to . . . cooperate with the Company in connection with any pending . . . investigation . . . ." *Id.* (quoting Bloomberg SMF ¶ 46).

that she suffered from a disability or that Bloomberg regarded her as disabled," and because Bloomberg had a justifiable, non-discriminatory basis to terminate her employment. MSJ at 1; *see* MSJ at 13–22. Bloomberg also seeks summary judgment on Felix's claim that the company's inquiry into her drug use violated the ADA's prohibition on disability-related inquiries. *Id.* at 2, 23–25.

For the reasons stated herein, the Court denies Bloomberg's motion for summary judgment as to Felix's disability discrimination claims under the ADA, NYSHRL, and NYCHRL, and grants the motion as to her disability-related inquiry claim.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 22. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the

7

suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)). "The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

## DISCUSSION

This discussion proceeds in three parts. First, the Court analyzes Felix's disability discrimination claim under the ADA and concludes that she has proffered enough evidence to raise a genuine issue of material fact as to whether Bloomberg's legitimate reason for terminating her was a pretext for disability discrimination. That claim therefore survives summary judgment. Second, because the NYSHRL and NYCHRL provide more lenient standards to plaintiffs alleging discrimination, the Court finds that Felix's claims under those statutes necessarily also survive summary judgment. Third, the Court concludes that the questions Bloomberg asked during its investigation did not violate the ADA's prohibition on disability-related inquiries, and thus grants summary judgment as to that claim.

**I.    Plaintiff's Disability Discrimination Claims Under the ADA, NYSHRL, and NYCHRL Survive Summary Judgment**

To plead disability discrimination under the ADA, a plaintiff must show that

> (1) the defendant is a covered employer; (2) the plaintiff suffered from, or was regarded as suffering from, a disability within the meaning of the statute; (3) the plaintiff was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability or perceived disability.

*Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 566–67 (S.D.N.Y. 2023) (quoting *Dobbs v. NYU Langone Medical Ctr*., No. 18-CV-1285 (MKV), 2021 WL 1177767, at *5 (S.D.N.Y. Mar. 29, 2021)).

By contrast, discrimination claims brought under the NYCHRL are subject to a more liberal standard. Indeed, courts now interpret the federal and state counterparts "as a floor below which the NYCHRL cannot fall." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015). Under the NYCHRL, a plaintiff must only plead "differential treatment of any degree based on a discriminatory motive . . . ." *Gorokhovsky v. New York City Hous. Auth*., 552 F. App'x 100, 102 (2d Cir. 2014). Claims under the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 299 (S.D.N.Y. 2019) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 209 (2d Cir. 2013)). As of August 12, 2019, the standard for discrimination claims under the NYSHRL is comparable to the standard of the NYCHRL. *De Souza v. Planned Parenthood Fed'n of Am., Inc*., No. 21-CV-5553 (LGS), 2023 WL 2691458, at *11 (S.D.N.Y. Mar. 29, 2023). As such, NYSHRL claims in this case "rise and fall" with NYCHRL claims. *Id.*

### A. Plaintiff's ADA Discrimination Claim Survives Summary Judgment

Bloomberg does not dispute that it is an employer covered by the ADA or that Plaintiff is a qualified employee. Bloomberg does challenge whether Plaintiff was suffering from, or was regarded as suffering from, a qualifying disability and whether Plaintiff suffered an adverse employment action because of her disability.

### 1. Qualifying Disability

Federal law defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C § 12102(1)(A). The term "substantially limits" should be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA" and "is not meant to be a demanding standard." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 n.3 (2d Cir. 2014) (citing 29 C.F.R. § 1630.2(j)(1)(i)). "[A]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.*

"Courts in this Circuit have found that . . . [a] generalized anxiety disorder can qualify as a disability under the ADA" where it substantially limits a major life activity. *Spillers v. City of N.Y. Health and Hosps. Corp.*, No. 15-CV-06472 (PKC), 2017 WL 4326505, at *4 n.5 (E.D.N.Y. Sept. 28, 2017), *aff'd sub nom*, 763 Fed. App'x 138 (2d Cir. 2019). *See also Bordeaux v. Halstead Prop. Dev. Mktg. LLC*, No. 20-CV-1347 (LJL), 2022 WL 484992, at *8 (S.D.N.Y. Feb. 16, 2022) (noting that an adjustment disorder with mixed anxiety and depressed mood could be considered a mental impairment under the ADA); *Cody v. Cnty. of Nassau*, 577 F. Supp. 2d 623, 638 (E.D.N.Y. 2008), *aff'd*, 345 F. App'x 717 (2d Cir. 2009) (explaining that a generalized anxiety disorder has been recognized as an impairment under the ADA). Sleep is "undoubtedly a major life activity." *Shine v. New York City Hous. Auth.*, No. 19-CV-4347 (RA), 2020 WL

5604048, at *6 (S.D.N.Y. Sept. 18, 2020) (quoting *Colwell v. Suffolk Cnty. Police Dept.*, 158 F.3d 635, 643 (2d Cir. 1998), *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553, *as recognized in Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 87–88 (2d Cir. 2010)); *see also* 28 C.F.R. § 35.108(c)(1)(i) (making clear that "[m]ajor life activities include but are not limited to . . . sleeping").

In light of the federal law's expansive coverage and the Court's duty to draw all reasonable inferences in favor of Plaintiff, Felix's alleged disability meets this standard. Felix has claimed that she suffers from a generalized anxiety disorder. PSAMF ¶ 67 (citing Felix Decl. ¶ 9). She attests that her "crippling anxiety" has affected her ability to sleep at "all times relevant to this lawsuit," including "render[ing] her fully incapable of sleeping at all" on "hundreds of nights." PSAMF ¶¶ 71–73. She attests that her anxiety simultaneously "interfered with her ability to concentrate or think about work or things other than what was worrying her at the moment." PSAMF ¶ 75 (citing Felix Decl. ¶ 14). And she includes as evidence a psychological mental health evaluation, ECF No. 42 ("Kellett Decl.") Ex. 2, as well as her Klonopin prescription from her psychiatrist, Kellett Decl. Ex. 3.

Felix's description of her sleeping difficulties is not simply "self-serving," as Defendant claims. *Cf. Baerga v. Hosp. For Special Surgery*, No. 97-CV-230 (DAB), 2003 WL 22251294, at *6 (S.D.N.Y. Sept. 30, 2003) ("Plaintiff's own self-serving descriptions of sleeping difficulties do not, by themselves, demonstrate an impairment that substantially limits the major life activity of sleep."). Instead, she attests to suffering through "hundreds of nights without any sleep at all," months of "getting only four to five hours of sleep a night on average," and includes a medical assessment that documents her "excessive anxiety" and "difficulty falling or staying asleep." PSAMF ¶¶ 68, 73. These sleeping challenges are "profound"—"ris[ing] well above the sleeping

11

difficulties experienced by the general population." *Felix v. N.Y.C. Transit Auth.*, 154 F. Supp. 2d 640, 654 (S.D.N.Y. 2001). Her hundreds of sleepless nights are themselves potentially sufficient to show that "Felix's chronic inability to sleep was a substantial limitation of a major life activity." *Id.* Therefore, Plaintiff has come forward with sufficient evidence to give rise to a genuine issue of material fact as to whether Plaintiff had a disability within the meaning of the ADA.

Additionally, Bloomberg "knew or reasonably should have known" about Felix's disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008). Felix's anxiety and Klonopin prescription were no secret: she expressly told Marchini about them both. PSAMF ¶ 78; Bloomberg Responses ¶ 78. Bloomberg does not deny it. MSJ at 16 ("Felix disclosed her anxiety to Bloomberg for the first time during the investigation . . . when she told Marchini that 'she was prescribed [Klonopin] for her anxiety.'"). At that moment, then, Bloomberg knew or reasonably should have known about Felix's disability. *Ruderman v. Law Off. of Yuriy Prakhin, P.C.*, No. 19-CV-2987 (CBA) (LB), 2024 WL 1952582, at \*3 (E.D.N.Y. Mar. 28, 2024) (quoting *Bourara v. N.Y. Hotel Trades Council & Hotel Ass'n of New York City, Inc. Emp. Benefit Funds*, No. 17-CV-7895 (DF), 2020 WL 5209779, at \*9 (S.D.N.Y. Sept. 1, 2020)) ("Courts in this circuit have held that an employee is 'not required to provide a formal diagnosis or medical evidence in order to put an employer on notice of a disability.'"); *see also Campbell v. IPsoft Inc.*, No. 18-CV-10684 (DF), 2021 WL 4248861, at \*24 (S.D.N.Y. Sept. 17, 2021) (concluding that an employer was on notice about an employee's disability because the employee told an HR representative about it).

Bloomberg relies on *Philbert v. New York City Department of Education* to argue that Felix telling Marchini about her anxiety and Klonopin prescription did not put Bloomberg on

notice about Felix's disability. MSJ at 15–16 (citing No. 21-CV-03119 (JLR), 2024 WL 756362 (S.D.N.Y. Feb. 23, 2024), *aff'd*, No. 24-804, 2025 WL 3251187 (2d Cir. Nov. 21, 2025)). In *Philbert*, the court found that an employer did not regard an employee "as having an impairment that substantially limits a major life activity" after the employee disclosed that she suffered from migraines. 2024 WL 756362, at *6–7. But *Philbert* is not controlling and is inapposite. First, migraines are not the same as generalized anxiety disorders; the cases therefore turn on entirely different impairments. The court in *Philbert* itself often highlighted that "there is adverse case law on whether migraines qualify as a disability." 2024 WL 756362, at *5 (cleaned up). Second, the *Philbert* plaintiff's disclosures did not include any information about her medical treatment. *Id.* at *7. And third, the *Philbert* plaintiff was certainly not being investigated by her employer related to her migraine medication.

By contrast, here, Bloomberg was explicitly put on notice about Plaintiff's impairment and Klonopin prescription, and the company was already alerted to Plaintiff's Klonopin use because it was investigating her for allegedly abusing that very drug. *See supra* I(A)(1) at 12. These distinguishing factors all "support[] the inference that [Felix's] employer" knew or reasonably should have known that she had "an impairment that substantially limits a major life activity." *Philbert*, 2024 WL 756362, at *7.

Accordingly, there is also a genuine issue of material fact as to whether Bloomberg regarded Plaintiff as having a disability under the ADA.

### 2. Discriminatory Intent

Bloomberg next asks for summary judgment because it argues that Felix did not suffer an adverse employment action (her termination) because of her disability. MSJ at 17–19. Bloomberg contends that "no evidence shows a bias-based motive for her termination." *Id.* at 17.

13

Instead, Bloomberg maintains that it fired Felix for a legitimate, non-discriminatory reason: "based on her lying during the investigation." *Id.* Felix counters "that Bloomberg's reason for terminating her was pretextual and that her disability was a but-for cause" of her firing. ECF No. 45 ("Opp.") at 14.

ADA employment discrimination claims like this one

> are subject to the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973): A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext.

*Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program,* 198 F.3d 68, 72 (2d Cir. 1999)). The "Second Circuit has held that a plaintiff need not prove that disability was the sole cause for the employer's decision," *Gonzalez v. Rite Aid of New York, Inc.*, 199 F. Supp. 2d 122, 130 (S.D.N.Y. 2002) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 336–37 (2d Cir. 2000)), but a plaintiff must still show "that discrimination was the but-for cause of any adverse employment action" they faced, *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

As explained above,

> [i]n order to establish a prima facie case of disability discrimination, [a plaintiff] must show that: (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability.

*Shiber v. Centerview Partners LLC*, No. 21-CV-3649 (ER), 2025 WL 2821906, at *10 (S.D.N.Y. Oct. 3, 2025). "The burden that such a plaintiff must meet in order to defeat summary judgment at the prima facie stage is 'not onerous,' and has been described as 'de minimis.'" *Sanzo v.*

14

*Uniondale Union Free Sch. Dist.*, 381 F. Supp. 2d 113, 117 (E.D.N.Y. 2005) (quoting *Howley v. Town of Stratford,* 217 F.3d 141, 150 (2d Cir. 2000)) (cleaned up); *see also Shiber*, 2025 WL 2821906, at *9; *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 254 (S.D.N.Y. 2015) (noting "Plaintiff's 'minimal burden' at the prima facie stage of the *McDonnell Douglas* framework").

Here, Felix has met that *de minimis* threshold. Again, as above, Bloomberg does not dispute that it is an employer covered by the ADA or that Plaintiff is a qualified employee. And the Court has concluded that Plaintiff has brought forward enough evidence to give rise to a genuine issue of material fact as to whether she had a disability within the meaning of the ADA and as to whether Bloomberg regarded her as having a disability under the ADA. *Supra* I(A)(1) at 10–13.

Plaintiff also satisfies her minimal burden to demonstrate that she suffered an adverse employment action because of her disability. As she highlights, she was fired approximately 36 hours after disclosing her disability and Klonopin use to the company. Opp. at 13 (citing (PSAMF ¶¶ 79, 93)). "The temporal proximity of these events provides enough evidence of causation to carry the low burden of establishing a prima facie case of disability discrimination." *Paige v. Garvan's Rock & Rye, LLC*, No. 24-CV-3189 (DLC), 2025 WL 3201762, at *4 (S.D.N.Y. Nov. 14, 2025). Moreover, Plaintiff's manager, Michael Wong, testified that Felix's "drug or prescription drug" use "was part of the basis for the recommendation that she be terminated." ECF No. 42-6 ("Wong Dep.") at 111:17–24. Accordingly, Plaintiff has established a prima facie case of disability discrimination.

Defendant, meanwhile, has offered a legitimate non-discriminatory reason for Felix's firing: that she lied during the investigation—both by claiming that she had "never been impaired

15

at work" and by allegedly failing to provide the July 10 text messages she sent Horan—in violation of Bloomberg's Employee Code of Conduct. MSJ at 17–18; Joint SMF ¶¶ 34, 36; Bloomberg SMF ¶ 40. *See Willford v. United Airlines, Inc.*, No. 18-CV-1060 (GBD), 2021 WL 4066502, at *5 (S.D.N.Y. Sept. 7, 2021), *aff'd*, No. 21-2483, 2023 WL 309787 (2d Cir. Jan. 19, 2023) (citing *Opoku-Acheampong v. Depository Tr. Co.*, No. 99-CV-0774 (GBD), 2005 WL 1902847, at *4 n.3 (S.D.N.Y. Aug. 9, 2005)) ("Lying in violation of a company policy is undoubtedly a legitimate, non-discriminatory reason for terminating an employee."); *see also Gonzalez v. United Parcel Serv.*, No. 15-CV-8421 (AKH), 2017 WL 8780567, at *2 (S.D.N.Y. Nov. 8, 2017) (holding that lying to management during an investigation established a legitimate, non-discriminatory reason for termination.) The question, then, is whether Felix has produced evidence sufficient to persuade a reasonable juror that Bloomberg's proffered reason for her firing was pretextual. This presents a close question.

Felix offers three reasons that her firing was pretextual and that her disability was a but-for cause of her termination. First, as discussed, Felix highlights that it took only approximately 36 hours for her to be fired after "Bloomberg learned of [her] disability and her use of Klonopin to treat same." Opp. at 15 (citing PSAMF ¶¶ 79, 93). This evidence alone is insufficient. "[A]lthough the temporal proximity of events may give rise to an inference of [discrimination] for the purposes of establishing a prima facie case . . . without more, such temporal proximity is insufficient to satisfy a plaintiff's burden to bring forward some evidence of pretext." *Clark*, 96 F. Supp. 3d at 263 (S.D.N.Y. 2015) (cleaned up). Therefore, that Felix was fired some 36 hours after she first met with HR and disclosed her disability does not, by itself, demonstrate that Bloomberg's proffered justification for her termination was pretextual.

16

Second, Felix stresses that of the 43 investigations Bloomberg conducted of Media employees between January 1, 2023, and November 6, 2024, hers was the only one that resulted in the company firing an employee for lying. Opp. at 17. However, Felix offers no details about the 42 other investigations that took place at Bloomberg's Media department between January 1, 2023, and November 6, 2024. *See* Opp. at 17. Absent any information about the other employees investigated, the other conduct at issue, or even how those other investigations concluded, it does not "strain[] credulity," as Plaintiff claims, that the other investigations ended any differently. *Id.* A "plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees," but she may only do so by "show[ing] she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Novick v. Vill. of Wappingers Falls, New York*, 376 F. Supp. 3d 318, 342 (S.D.N.Y. 2019) (cleaned up). "And to be similarly situated in 'all material respects,' a plaintiff must 'show that similarly situated employees who went undisciplined engaged in comparable conduct.'" *Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)) (cleaned up). Felix fails to demonstrate as much here.

Third, Felix argues that Marchini's contemporaneous notes, her messages to Marchini, and her manager's later testimony undercut Bloomberg's proffered explanation that Felix was fired because she was not truthful during the investigation. Specifically, Felix points out that during their second meeting, Marchini penned "doesn't recall" next to other notes about Felix's Klonopin use—undermining Marchini's conclusion that Felix denied ever taking Klonopin in the workplace. Opp. at 15. Bloomberg aptly points out that right below Marchini's "doesn't recall" notation, Marchini also wrote "didn't take it"—buttressing, rather than contradicting, her ultimate conclusion that Felix denied taking Klonopin in the workplace. ECF No. 48 ("Reply") at

17

9 (citing ECF No. 42-5 at 7). Marchini also confirmed her handwritten notations at her deposition. *Id.* (citing ECF No. 47-3 ("Marchini Dep.") 229:20–230:5). In any event, even if Felix had told Marchini that she did "not recall" whether she had taken Klonopin at work, that hardly undercuts Manchini's conclusion that Felix was not fully forthcoming during the investigation.

Felix also contends that, contrary to Bloomberg's position, she *did* send Marchini text messages from July 10, 2023, demonstrating her Klonopin use at work. Opp. at 15 (citing Joint SMF ¶ 32; PSAMF ¶ 91)). This evinces a genuine issue of material fact fit for trial. If Felix was forthcoming about her July 10 texts—namely, those that make clear that she was "fucked up" at work—Bloomberg can hardly argue that it terminated her because she lied during its investigation. *See* Joint SMF ¶¶ 11–13.

Most saliently, though, Plaintiff stresses that her manager, Wong, whose approval was necessary for Bloomberg to fire her, testified that Felix's "drug or prescription drug" use "was part of the basis for the recommendation that she be terminated." Opp. at 16–17 (citing PSAMF ¶¶ 94–97); *see* Wong Dep. at 111:17–24. Resolving all ambiguities and drawing all factual inferences in Felix's favor, this evidence is—just barely—sufficient to create an issue of fact as to whether Bloomberg's alleged reason for the termination is pretextual. Critically, Bloomberg fails to explain away Wong's direct testimony that Felix's prescription drug use was "part of the basis for the recommendation that she be terminated." Wong Dep. 111:17–24 ("Q. Ariel Felix's use of either a drug or prescription drug was part of the basis for the recommendation that she be terminated? . . . A: Yes."); *see also* Bloomberg Responses ¶ 97 (quoting Wong Dep. 157:15–160:8) (clarifying that the recommendation in question was Marchini's, which turned on both "the severity of [Felix's] conduct violation *and* [her] lies during the investigation" (emphasis

18

added)). Bloomberg's conclusory argument that "Wong did not approve the termination decision *because of* Felix's use of prescription drugs, but because she lied during the investigation" is not enough to eliminate the possibility that *both* Felix's prescription drug use because of a disability *and* her lies formed the basis for the decision to fire her. Reply at 7; *see Gonzalez*, 199 F. Supp. 2d at 130 (citing *Parker*, 204 F.3d at 336–37) (explaining that in the Second Circuit, "a plaintiff need not prove that disability was the sole cause for the employer's decision").

"It has oft been noted that courts should be 'particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question.'" *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 255 (S.D.N.Y. 2009) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)); *see also Almond v. Westchester Cnty. Dep't of Corr.*, 425 F. Supp. 2d 394, 398 (S.D.N.Y. 2006). And here, where Felix does not just "rest upon the mere allegations or denials of the adverse party's pleading," but "set[s] forth specific facts showing that there is a genuine issue for trial," the Court must exercise such caution. *Sista*, 445 F.3d at 169 (quoting Fed. R. Civ. P. 56(e)).

Accordingly, Plaintiff's ADA disability discrimination claim survives summary judgment.

### B. Plaintiff's NYSHRL and NYCHRL Claims Necessarily Survive Summary Judgment

The NYSHRL and NYCHRL impose a more lenient standard than does the ADA for plaintiffs alleging discrimination. Under the NYCHRL, a plaintiff need only show that her employer treated her "less well, at least in part for a discriminatory reason." *Mihalik*, 715 F.3d at 110 n.8. And, as explained above, NYSHRL claims in this case "rise and fall" with NYCHRL claims. *See supra* I at 9. Because Felix's ADA claim survives summary judgment, her NYSHRL and NYCHRL claims necessarily do, too.

19

**II.    Plaintiff's Claim That Bloomberg's Investigation Questions Violated the ADA Does Not Survive Summary Judgment**

Lastly, Plaintiff alleges that Bloomberg's investigation questions about her drug use are themselves enough to establish an ADA violation. *See* Opp. at 20–21. "[A]t a minimum," Felix contends, "a genuine issue of material fact exists as to whether Marchini's inquiry – 'Do you take drugs?' – was consistent with business necessity." *Id.* at 21. Bloomberg argues that Marchini did not seek information from Felix about her disability status and, even if the Court finds that she did, Marchini "had every reason to ask questions to determine Felix's impairment in the workplace to ensure that the impairment did not impact her work or her coworkers." MSJ at 24. To determine whether Marchini's questions violated the ADA, the Court must assess: (1) whether the questions constituted "disability-related inquiries"; and if so, (2) whether they were justified under the ADA's business necessity exemption. *Conroy v. New York State Dep't of Corr. Servs.,* 333 F.3d 88, 96 (2d Cir. 2003).

The ADA prohibits covered employers from "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). "Whether a particular examination or inquiry falls within this statute depends on whether it may tend to reveal a disability." *Niles v. New York City Hum. Res. Admin.*, No. 22-CV-6307 (AMD), 2024 WL 496346, at *10 (E.D.N.Y. Feb. 8, 2024) (cleaned up). The EEOC defines a "disability-related inquiry" as "a question . . . that is likely to elicit information about a disability," and explicitly states that such an inquiry may include "asking an employee whether s/he currently is taking any prescription drugs or medications, whether s/he has taken any such drugs or medications in the past, or monitoring an employee's taking of such drugs or medications." *Questions and Answers: Enforcement*

20

*Guidance on Disability–Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)*, EEOC (July 27, 2000), https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees ("EEOC Guidance"). Similarly, the Second Circuit has suggested that "a requirement that employees disclose what prescription drugs they use" ought to be prohibited by the statute because it "would reveal disabilities (or perceived disabilities) to employers." *Conroy*, 333 F.3d at 95.

Inquiries "shown to be job-related and consistent with business necessity," however, are exempt from this prohibition. 42 U.S.C. § 12112(d)(4)(A). To "prov[e] a business necessity, an employer must show more than that its inquiry is consistent with mere expediency." *Conroy*, 333 F.3d at 97 (internal quotation marks omitted). That means that an employer's inquiry must be more than merely "convenient or beneficial to its business." *Id.* "Rather, the employer must show that the business necessity is 'vital to the business.'" *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 372 (S.D.N.Y. 2018) (quoting *Conroy*, 333 F.3d at 97). "The employer must also show that the request is not broader or more intrusive than is necessary." *Id.* (quoting *Conroy*, 333 F.3d at 98). Quintessential examples of "valid business necessities include where an employer has reason to doubt the employee's capacity to perform his or her duties based on a known disability, or where an employer has reason to suspect abuse of an attendance policy." *Id.*

Here, although there is some dispute as to what specific questions Marchini asked Felix over the course of their two meetings, there is little doubt that Marchini's inquiries into Felix's prescription drug use were disability-related inquiries within the meaning of the ADA. *See supra* at 4–5. Bloomberg argues that because Felix "just started rattling off the prescription drugs that [she] was taking" and "overshared" in response to Marchini's questions, Marchini could not have

21

violated the ADA's prohibition on disability-related inquiries. MSJ at 24 (quoting Bloomberg SMF ¶ 26). Further, Bloomberg argues that Marchini "focused her questioning on Felix's drug use at work on July 10, 2023," not on her drug use generally. Reply at 12. But "a violation of § 12112(d) occurs at the moment an employer . . . asks an improper disability-related question, regardless of the results or response." *Katz v. Adecco USA, Inc.*, 845 F. Supp. 2d 539, 545 n.7 (S.D.N.Y. 2012) (quoting *Green v. Joy Cone Co.,* 107 F. App'x 278, 280 (3d Cir. 2004)). And the parties agree that Marchini asked Felix about her prescription drug use at work, Joint SMF ¶ 24—a question that is "likely to elicit information about a disability" regardless of where the alleged drug use occurred. EEOC Guidance; *see also Conroy*, 333 F.3d at 96. Marchini's questions about Felix's prescription drug use were therefore disability-related inquiries.

Nevertheless, Marchini's inquiries were also exempt from the statute's prohibition on disability-related inquiries because her questions were "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Felix cites out-of-Circuit case law to argue that the exception should not apply to Marchini's questions because "Marchini was never presented with any evidence that Felix was incapable of performing the essential functions of her role or that she posed a safety risk to her employees." Opp. at 21 (citing *Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019)). But Marchini had evidence—from Felix herself—that Felix had been "high" on an internal work call and was "fucked up" in the office, Joint SMF ¶¶ 11, 13, 20—giving her sufficient "reason to doubt [Felix's] capacity to perform . . . her duties," *Berger*, 304 F. Supp. at 372.

Although the parties agree that Felix was a strong performer at work, Marchini's questions about Felix's drug use were undoubtedly "job-related and consistent with business necessity" because Marchini had "a reason for suspecting that [Felix] would be unable to

perform [her] essential job functions" into the future. *Conroy*, 333 F.3d at 100; *see also id.* at 97 (citing *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 515 (3d Cir. 2001) (finding an examination to be "job related" and "consistent with business necessity" where it inquired about "the employee's fitness for the work at issue"); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999) (reasoning that "for an employer's request for an exam to be upheld, there must be significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job").

Accordingly, Marchini's questions did not themselves violate the ADA's prohibition on disability-related inquiries, and Bloomberg's motion for summary judgment on this issue is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's disability discrimination claims survive, while her disability-related inquiries claim does not.

It is hereby ORDERED that counsel for all parties meet for at least one hour to discuss settlement and file a joint status letter to the Court by **April 8, 2026.** The letter shall confirm that the one-hour settlement discussion took place and shall also indicate, if a settlement has not been reached, whether the parties consent to a referral for a settlement conference before Judge Ona T. Wang. The letter must not identify, explicitly or implicitly, any party that has declined to consent. The letter shall also include, if applicable, the parties' availability for trial in November and December 2026, and January 2027.

23

The Clerk of Court is respectfully directed to terminate ECF No. 31.


Dated: March 24, 2026
      White Plains, New York

                                        SO ORDERED.

                                        JESSICA G. L. CLARKE
                                        United States District Judge